UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KELLY M. SCHULTZ,

        Plaintiff,                            Case No. 12-11451
                                               Honorable Thomas L. Ludington
v.

SPEEDWAY SUPERAMERICA, LLC,

        Defendant.

_____/

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Kelly Schultz has decided not every dispositive motion deserves a response. Defendant Speedway Superamerica, LLC filed a motion for summary judgment in October 2012, but Plaintiff's did not respond. Defendant has shown there is no genuine issue of material fact in this case, and its motion for summary judgment will be granted.

**I**

**A**

Plaintiff is no stranger to injuries and operations. In 1976, he was injured on the job when almost 1500 pounds of steel fell on his legs. Both were crushed below the knees, with approximately 14 breaks between them. After surgery, Plaintiff was told he would never walk again, but he shed his wheelchair and crutches in less than a year and now only needs a cane "in the winter months when it's cold." Pl.'s Dep. 13, ECF No. 9, Ex. 1. In 1980, Plaintiff underwent a high tibial osteotomy[1] to address the fact that his legs had become misaligned. Doctors removed over half an inch of bone from his left knee "in order to swing it all back," *id*.

---

[1] During a high tibial osteotomy, surgeons remove a wedge of bone from the knee, which causes the leg to bend slightly inward.

at 18, and now Plaintiff's right leg is slightly longer than his left.  He currently takes 400 milligrams of Tramadol every day to deal with the resulting chronic pain.  In 1993, Plaintiff was in an automobile accident that caused severe back problems, slowing him down for almost a year.  In addition, in 2005 Plaintiff had a complete gastric bypass to address severe obstructive sleep apnea, heart problems, and diabetes.

But that was not the end.  Plaintiff continued to suffer constant pain in his left knee, the leg involved in the high tibial osteotomy, and he and his doctors decided to "go in and fix it."  *Id.* at 17.   In February 2009, Plaintiff underwent a complete left knee replacement.  He was bedridden for 24 hours following the operation, and after that began walking and climbing stairs with assistance.  Plaintiff was discharged from the hospital at that time, and physical therapists visited his home three days a week to perform therapy.  Although he progressed quickly after surgery, doctors recommended that he walk with a cane for stability.

About two weeks after surgery, on February 27, 2009, Plaintiff was on his way to a follow-up appointment regarding his left knee.  Plaintiff was unable to drive due to the operation so his brother, Alfred Schultz, drove instead.  Around 10:00 a.m. they stopped at the local Pinconning Speedway gas station to get coffee, as the station is only two or three miles from where they live.  Plaintiff had been there "lots of times" as it is where he regularly goes to "pick up coffee in the morning."  *Id.* at 21.  Alfred stops there every day on his way to work.  A. Schultz Dep. 9, ECF No. 9, Ex. 3.

Both Plaintiff and his brother testified that February 27 was a cold, wintry day.  *Id.* at 9; Pl.'s Dep. 21.  Plaintiff remembered that it was "snowy and it had rained the night before."  Pl.'s Dep. 21.  He testified that there were a "couple of inches" of snow on the ground, *id*, and he was

walking "very carefully" because of the weather. *Id*. at 25. Plaintiff went into the Speedway

station without incident, picked up his coffee, and then walked back outside.

After Plaintiff left the Speedway station, his cane in his left hand and a cup of cappuccino

in his right, he slipped as he made his way around his brother's car. He landed directly on his

recently-repaired knee, causing serious injury. The next day, Plaintiff underwent a second left-

knee surgery to repair the recent disruption of his lateral retinaculum.[2]  During surgery, the

plastic components that had been installed during Plaintiff's original knee-operation were

replaced, his wound was irrigated, his retinaculum was closed, and then his wound was sewed

back up. Plaintiff was discharged from the hospital on March 2, 2009.

Both Plaintiff and Alfred testified concerning the cause of Plaintiff's slip and fall at the

Speedway station. Plaintiff established that after he slipped and fell, he "could see that there was

a sheet of ice underneath all this slush and stuff that was on top." Pl.'s Dep. 26. The ice was

slick and shiny. *Id*. at 26–27. As Alfred filled out an accident-report form with the Speedway

station later that day, he noted that the weather conditions were "Cold, icy, wet." A. Schultz

Dep. 16. Alfred further testified as follows:

> Q:    Now, did your brother tell you anything about why he fell?
> A:    Because it was slippery and it was pretty obvious.
> Q:    Why would you say it was obvious?
> A:    Because I almost fell on my butt, too.
> Q:    Okay. Any other reason you say it was obvious?
> A:    Because of the ice on the ground right there.
> Q:    So you saw ice on the ground?
> A:    Yes. I almost fell on my butt, too, I think. You know, it's not uncommon
>       for that parking lot to have ice on it. I've been going there for years.
> Q:    And you've seen ice there before?
> A:    Many times. Every winter.

*Id*. at 13.

---

[2] The fibrous tissue on the outer side of the kneecap, which helps support the kneecap in its position in relation to the femur bone beneath it.

**B**

On February 23, 2012 Plaintiff filed a complaint against Defendant Speedway Superamerica, LLC in Bay County Circuit Court.  The one-count complaint charges Defendant with negligently breaching its duty to use reasonable care to render its premises in a reasonably safe condition for Plaintiff's use.  Defendant was served with copies of the complaint on March 2, 2012, and timely removed the action to this Court on March 30, 2012.

Defendant then filed a motion for summary judgment on October 26, 2012.  Although the Local Rules allow only 21 days for a response to a summary judgment motion, E.D. Mich. LR 7.1(e)(1)(B), Plaintiff has yet to file any response.

**II**

When faced with a plaintiff's decision to not respond to a motion for summary judgment, a court has two options.  First, the court may consider the motion for summary judgment on its merits.  Although unopposed, the court must still ensure that the movant has met its burden under Rule 56(c) of establishing the absence of any genuine issue of material fact.  *Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991); *see also Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005) (unpublished table opinion) ("When a non-moving party fails to respond, therefore, the district court must, at a minimum, examine the moving party's motion for summary judgment to ensure that it has discharged its initial burden.").

Alternatively, Rule 41(b) of the Federal Rules of Civil Procedure, governing involuntary dismissal, provides the district court with a means of dismissing the action for failure to prosecute. *Miller*, 141 F. App'x at 419.  That rule provides: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision

(b) . . . operates as an adjudication on the merits." Fed. R. Civ. P. 41(b).  Although couched in terms of an order upon a defendant's motion, it has long been recognized that this rule authorizes a district court's sua sponte dismissal of an action.  *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629–31 (1962); *see also Steward v. City of Jackson*, 8 F. App'x 294, 296 (6th Cir. 2001) (unpublished table opinion) ("Rule 41(b) recognizes the power of the district court to enter a sua sponte order of dismissal."); *Jourdan v. Jabe*, 951 F.2d 108, 109 (6th Cir. 1991) (same).

While both options are available, "the dismissal of a claim for failure to prosecute is a harsh sanction which the court should order only in extreme situations showing a clear record of contumacious conduct by the plaintiff."  *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 736 (6th Cir. 2008) (brackets omitted) (quoting *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005)).  Therefore, Defendant's motion for summary judgment will be assessed on its merits to determine whether any genuine issues of material fact exist in this case.

Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The focus must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby,* 477 U.S. 242, 251–52 (1986).  All justifiable inferences from the evidence are drawn in the non-moving party's favor.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  Summary judgment is proper where a plaintiff fails to produce evidence creating a genuine issue of material fact as to any of the essential elements of her prima facie case.  *Dietelbach v. Ohio Edison Co.*, 1 F. App'x 435, 437 (6th Cir. 2001) (citing *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995)).

**III**

Upon review of Defendant's motion, regardless of the fact that Plaintiff did not respond, Defendant is entitled to judgment as a matter of law.[3]  It is apparent from Defendant's motion and Plaintiff's deposition that both parties agree Plaintiff slipped and fell on snow covered ice. Because Defendant has demonstrated the accumulation of snow and ice was open and obvious, it is entitled to summary judgment.

Generally, a premises possessor in Michigan owes a duty to use reasonable care to protect invitees from an unreasonable risk of harm caused by dangerous conditions on the premises.  *Lugo v. Ameritech Corp., Inc.*, 629 N.W.2d 384, 386 (Mich. 2001) (citing *Bertrand v. Alan Ford, Inc.*, 537 N.W.2d 185, 186 (Mich. 1995)).  This duty, however, does not extend to dangers that are open and obvious.  *Hoffner v. Lanctoe*, 821 N.W.2d 88, 94 (Mich. 2012).  A danger is open and obvious if an ordinarily prudent person would typically be able to see it and avoid it.  *Lugo*, 629 N.W.2d at 388 (citing *Bertrand*, 537 N.W.2d at 189)).  Put another way, the test to determine if a danger is open and obvious is whether "an average user with ordinary intelligence would have been able to discover the danger and the risk presented upon casual inspection."  *Joyce v. Rubin*, 642 N.W.2d 360, 364 (Mich. Ct. App. 2002) (brackets omitted) (quoting *Novotney v. Burger King Corp.*, 499 N.W.2d 379, 381 (Mich. Ct. App. 1993)).  A premises possessor "owes no duty to protect or warn of dangers that are open and obvious because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid."  *Hoffner*, 821 N.W.2d at 94 (internal quotation marks omitted) (quoting *Riddle v. McLouth Steel Products Corp.*, 485 N.W.2d 676, 681 (Mich. 1992)).

---

[3] Because Plaintiff's only claim is for state-law negligence, heard in this Court pursuant to diversity jurisdiction, Michigan state law governs the analysis.  *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

An exception to this rule exists where an open and obvious hazard contains "special aspects" which make it "unreasonably dangerous." *Lugo*, 629 N.W.2d at 386. If an open and obvious hazard contains such special aspects, then the premises possessor must take reasonable steps to protect invitees from the associated dangers. *Id.* Special aspects are only those that "give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided." *Id.* at 387–88. Neither a common condition nor an avoidable condition is uniquely dangerous. *Corey v. Davenport Coll. of Bus.*, 649 N.W.2d 392, 396 (Mich. Ct. App. 2002). The Michigan Supreme Court recently established,

> The "special aspects" exception to the open and obvious doctrine for hazards that are effectively unavoidable is a limited exception designed to avoid application of the open and obvious doctrine only when a person is subjected to an unreasonable risk of harm. Unavoidability is characterized by an *inability to be avoided,* an *inescapable* result, or the *inevitability* of a given outcome.

*Hoffner*, 821 N.W.2d at 99 (emphasis in original) (citing *Random House Webster's College Dictionary* (1997)). The court went on, "[i]t bears repeating that exceptions to the open and obvious doctrine are *narrow* and designed to permit liability for such dangers only in *limited,* extreme situations. *Hoffner*, 821 N.W.2d at 101 (emphasis in original).

With specific regard to snow and ice cases, the Michigan Supreme Court has "rejected the prominently cited notion that ice and snow hazards are obvious to all and therefore may not give rise to liability under any circumstances" *Id.* at 96 (brackets and footnote omitted). It is well-established, however, "that wintry conditions, like any other condition on the premises, may be deemed open and obvious. Michigan courts thus ask whether the individual circumstances, including the surrounding conditions, render a snow or ice condition open and obvious such that a reasonably prudent person would foresee the danger." *Id.* at 96–97 (footnotes omitted).

In *Joyce*, a Michigan Appellate Court addressed a case similar to the one here, i.e., one involving a slip and fall on snow and ice. 642 N.W.2d 360. The court first analyzed whether the

snow and ice present on a sidewalk was an open and obvious condition. *Id*. at 364. The court

determined that the plaintiff was "undoubtedly aware" of the snowy and icy condition of the

sidewalk and the danger of slipping before she fell. *Id*. at 364–65. The court then concluded that

the trial court had properly determined that the condition was open and obvious. *Id*. at 365. *See*

*also Corey*, 649 N.W.2d at 394–95 ("Plaintiff is a reasonable person who recognized the snowy

and icy condition of the steps and the danger the condition presented. Thus, we also conclude

that the condition was open and obvious.").

The *Joyce* court next analyzed whether the slippery sidewalk nonetheless presented an

unreasonably dangerous risk even though the danger was open and obvious. *Joyce*, 642 N.W.2d

at 365–66. The court noted that if a danger is deemed open and obvious,

> [T]he critical question is whether there is evidence that creates a genuine issue of
> material fact regarding whether there are truly "special aspects" of the open and
> obvious condition that differentiate the risk from typical open and obvious risks
> so as to create an unreasonable risk of harm, i.e., whether the "special aspect" of
> the condition should prevail in imposing liability upon the defendant or the
> openness and obviousness of the condition should prevail in barring liability.

*Joyce*, 642 N.W.2d at 365 (quoting *Lugo*, 629 N.W.2d at 387). The *Joyce* court then determined

that the plaintiff had presented no evidence that the "condition and surrounding circumstances

would give rise to a uniquely high likelihood of harm or that it was an unavoidable risk." *Joyce*,

642 N.W.2d at 366. The court concluded that there was no evidence to suggest that "the

condition was so unreasonably dangerous that it would create a risk of death or severe injury."

*Id*. The court then affirmed summary judgment on behalf of the defendant. *Id*. at 368.

In the instant case, the snow and ice Plaintiff slipped on was just the type of hazard an

average user with ordinary intelligence would have been able to discover. In fact, the evidence

demonstrates that both Plaintiff and his brother Albert did discover the dangerous condition

presented by the snow and ice at Defendant's gas station. Both men recognized that there was

snow on the ground, that it was a cold, wintery day, and that the condition was dangerous. Plaintiff attempted to walk carefully because of the weather. Pl.'s Dep. 25. Alfred testified the slippery nature of the snow and ice was "pretty obvious." A. Schultz Dep. 13. Further, Alfred established that such a circumstance was anything but rare. He testified that Defendant's lot accumulates ice "[e]very winter," *id*, a parking lot Plaintiff has used regularly for years. Pl.'s Dep. 21. It follows that the accumulation of snow and ice was open and obvious, both objectively and subjectively.

The next question involves whether the snow and ice contained special aspects making it unreasonably dangerous, allowing Plaintiff to recover despite the open and obvious nature of the accumulation. As in *Joyce*, there is no evidence that the snowy and icy condition of Defendant's lot "would give rise to a uniquely high likelihood of harm or that it was an unavoidable risk." Plaintiff and his brother could have gone to any number of coffee shops the morning of February 27, 2009 — there certainly was nothing unavoidable about Defendant's parking lot. Further, snow and ice is typically not the type of condition that gives rise to a uniquely high likelihood of harm. *See Hoffner*, 821 N.W.2d at 99; *Joyce*, 642 N.W.2d at 366; *Corey*, 649 N.W.2d at 395. Because Plaintiff has not offered any countervailing arguments for why the snow and ice was an unreasonably dangerous condition, and Defendant has carried its burden to otherwise show no genuine issues of material fact exist, Defendant's motion for summary judgment will be granted.

**IV**

Accordingly, it is **ORDERED** that Defendant's Motion for Summary Judgment, ECF No. 9, is **GRANTED**.

Dated: January 11, 2013                                  s/Thomas L. Ludington
                                                         THOMAS L. LUDINGTON
                                                         United States District Judge

- 10 -

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 11, 2013.

s/Tracy A. Jacobs
TRACY A. JACOBS